JEROME S. COHEN (SBN 143727)
ELAINE V. NGUYEN (SBN 256432)
3731 Wilshire Blvd. (Suite 514)
Los Angeles, CA 90010
Telephone: (213) 388-8188
Facsimile:  (213) 388-6188
Email: jsc@jscbklaw.com

Attorneys for Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA--LOS ANGELES DIVISION

In re:

DREENA MARIE DE SILVA,

                                        Debtor.

) Case No. **2:09-bk-42475-EC**
)
) Chapter 11
)
) **SECOND AMENDED DISCLOSURE**
) **STATEMENT DESCRIBING SECOND**
) **AMENDED CHAPTER 11 PLAN**
)
) **Disclosure Statement Hearing**
)
) **Date:**   July 13, 2010
) **Time:**   3:00 pm
) **Ctrm:**   1639
)           255 E. Temple St.
)           Los Angeles, CA 90012
)
)
) **Plan Confirmation Hearing**
) Date:    TBD
) Time:    TBD
) Ctrm**:**   1639
)           255 E. Temple St.
)           Los Angeles, CA 90012
)
)
)
)
)
)
)
)
)
)
)

1

## TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . .................................................... 1
        A.    Purpose of This Document . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
        B.    Deadlines for Voting and Objecting; Date of Plan Confirmation
              Hearing . . . . . . . . . . . . ..................................................... 3
              1.    Time and Place of the Confirmation Hearing . . . . . . . . . . . . . . . . . . . . 3
              2.    Deadline for Voting For or Against the Plan . . . . . . . . . . . . . . . . . . . ... . 3
              3.    Deadline for Objecting to the Confirmation of the Plan . . . . . . . . . . . . . 3
              4.    Identity of Person to Contact for More Information Regarding
                    the Plan . . . . . . . . . . . ..................................................... 3
        C.    Disclaimer . . ...................................................... .. . . 4

II.     BACKGROUND . . . . . . . . . . . . . . . . . . . ........................................ 4
        A.    Description and History of the Debtor's Business . . . . . . . ...... . . . . . . . . . . . . . 4
        B.    Events Leading to Chapter 11 Filing  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        C.    Significant Events During the Bankruptcy................................ 5
              1.    Employment of Professionals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
              2.    Valuation of The Burnside Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
              3.    Procedures Implemented to Resolve Financial Problems . . . . . . . . . . . 6
              4.    Current and Historical Financial Conditions  . .. . . . . . . . . . . . . . . . . . . . 7

III.    SUMMARY OF THE PLAN OF REORGANIZATION . . . . . . .......................... 7
        A.    Introduction............................................................. 7
        B.    "1111(b) Election"....................................................... 8

IV.     CLASSIFICATION AND TREATMENT OF CLAIMS AND
        INTERESTS UNDER THE PLAN.......................... . . . . ......................... . 9
        A.    What Creditors and Interest Holders Will Receive Under the
              Proposed Plan . . . . . . . . . . . . ..................................................... 9
        B.    Unclassified Claims . . . . . . . . . . ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 9
              1.    Administrative Expenses . . ......................................... .. . . . . . . . 10
              2.    Priority Tax Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        C.    Classified Claims and Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
              1.    Classes of Secured Claims . . . . . . . . . ...................................... 12
              2.    Classes of Priority Unsecured Claims . . ............................................ 14
              3.    Classes of General Unsecured Claims . ............................................ . . 15
        D.    Means of Effectuating the Plan . . . . . . . . . .................................................... 15
              1.    Funding for the Plan . . . . . . . ...................................................... 15
              2.    Post-Confirmation Management  . . ...................................................... . . . . 16
              3.    Disbursing Agent  . . ...................................................... 16
        E.    Risk Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        F.    Other Provisions of the Plan . . . . . . . . . ...................................................... 17
              1.    Executory Contracts and Unexpired Leases  . ........................................ 17
              2.    Changes in Rates Subject to Regulatory Approval . . . . . . . . . . . . . . . . . 17
              3.    Retention of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        G.    Tax Consequences of Plan . . . . . . . . . ...................................................... 17

V.      CONFIRMATION REQUIREMENTS AND PROCEDURES . . . . . ...................... 18
        A.    Who May Vote or Object . . . . . . . ¡ ...................................................... 18
              1.    Who May Object to Confirmation of the Plan . . . . . . . . . . . . . . . . . . . . 18
              2.    Who May Vote to Accept/Reject the Plan  . ........................................ 18
                    a.    What is an Allowed Claim/Interest . . . ........................................ 19
                    b.    What Is an Impaired Claim/Interest . . . . ........................................ 19

3. Who is Not Entitled To Vote ...................................................... 20

4. Who Can Vote in More Than One Class ................................. 20

5. Votes Necessary to Confirm the Plan ...................................... 20

6. Votes Necessary for a Class to Accept the Plan . . . . . . . . . . . . . . . .......21

7. Treatment of Nonaccepting Classes . . . . ............................................. 21

8. Request for Confirmation Despite Nonacceptance
by Impaired Class(es) . . ................................................... . . . . . . . . . 21

B. Liquidation Analysis......................................................................... 21

C. Feasibility . . . . ...................................................... . . . . . . . . . . . . . 25

1. "Stage One" of the Plan ...............................................................26

2. "Stage Two" of the Plan ...............................................................28

**VI. EFFECTS OF CONFIRMATION OF PLAN** . . . . . . . . . ..................................... 31

A. Discharge . . . . . . . . . . . ...................................................... . . . . . . 31

B. Revesting of Property in the Debtor . . ......................................... . . . . 31

C. Modification of Plan . . . . . . . ............................................................ 31

D. Post-Confirmation Status Report . . . . ........................................... . . . 31

E. Quarterly Fees . . . . . . . . ....................................................... . . . . . . . . 32

F. Post-Confirmation Conversion/Dismissal . .................................. . . . . . 32

G. Final Decree . . . . . . . . . . . . . . . ...................................................... . . . . . 33

**VII. DECLARATION OF DREENA MARIE DE SILVA** . . . . . . . ..................... . . . . . . . 34

EXHIBIT A - LIST OF ALL ASSETS
EXHIBIT B - FINANCIAL STATEMENT
EXHIBIT C - LIST OF GENERAL UNSECURED CLAIMS

ii

# I.

## INTRODUCTION

Dreena Marie De Silva, an individual, is the Debtor and Debtor-in-Possession ("Debtor") in a Chapter 11 bankruptcy case. On November 18, 2009, the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 et seq.  Chapter 11 allows the Debtor, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization ("Plan").  The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtor is the party proposing the Plan sent to you in the same envelope as this document.  THE DOCUMENT YOU ARE READING IS THE SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN.

This is a reorganizing plan.  In other words, the Debtor seeks to accomplish payments under the Plan by restructuring secured debts and making payments to creditors from the Debtor's post-confirmation income and savings.  The Effective Date of the proposed Plan will be the tenth day following the date of entry of the Bankruptcy Court order confirming the Plan ("Plan Confirmation Order"), providing there has been no order entered staying the effectiveness of the Plan Confirmation Order.  If there has been an order entered staying the effectiveness of the Plan Confirmation Order, the Effective Date shall be the first business day after the stay is no longer in effect with respect to the Plan Confirmation Order.

## A. __Purpose of This Document__

This Second Amended Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

\\

**READ THIS SECOND AMENDED DISCLOSURE STATEMENT CAREFULLY IF YOU**
**WANT TO KNOW ABOUT:**

      **(1)**    **WHO CAN VOTE OR OBJECT,**

      **(2)**    **WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim**
            **will receive if the Plan is confirmed), AND HOW THIS TREATMENT**
            **COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN**
            **LIQUIDATION,**

      **(3)**    **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS**
            **DURING THE BANKRUPTCY,**

      **(4)**    **WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER**
            **OR  NOT TO CONFIRM THE PLAN,**

      **(5)**    **WHAT IS THE EFFECT OF CONFIRMATION, AND**

      **(6)**    **WHETHER THIS PLAN IS FEASIBLE.**

      This Second Amended Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

      Be sure to read the Plan as well as the Second Amended Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

      The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

\\

\\

2

**B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS SECOND AMENDED DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1.      Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to confirm the Plan will take place on _____, at _____, in Courtroom 1639, located at 255 East Temple Street, Los Angeles, California 90012.

**2.      Deadline For Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to
Jerome S. Cohen
3731 Wilshire Blvd., Suite 514
Los Angeles, CA 90020
Your ballot must be received by 5:00 p.m. PST, on _____or it will not be counted.

**3.      Deadline For Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon

Jerome S. Cohen
3731 Wilshire Blvd., Suite 514
Los Angeles, CA 90020
by _____.

**4.      Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact:

Jerome S. Cohen
3731 Wilshire Blvd., Suite 514
Los Angeles, CA 90020
Telephone: (213) 388-8188

## C.    <u>Disclaimer</u>

The financial data relied upon in formulating the Plan is based on Debtor's books and records.  The information contained in this Second Amended Disclosure Statement is provided by the Debtor and the Debtor's accountant, Klein Mandelblatt & Co., LLP.  The Debtor represents that everything stated in the Second Amended Disclosure Statement is true to the Debtor's best knowledge.  The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## II.

## BACKGROUND

## A.    <u>Description and History of the Debtor's Business</u>

The Debtor is an individual.   The Debtor's main asset is real property located at 1025 South Burnside Avenue, Los Angeles, CA (the "Burnside Property").  The Debtor resides at the Burnside Property and has operated a day care business from the Burnside Property since 1992.  In 2002, the Debtor formed De Silva Day Care Inc.(the "Day Care"), a California corporation.  The Debtor is the president of the Day Care.  The Day Care is wholly owned by the Debtor and the main source of Debtor's income.

The Debtor rents the Burnside Property to the Day Care for $6,000.00 per month The Debtor also receives a salary from the Day Care.  On June 1, 2010, the Debtor increased her monthly salary from $1,500.00 (gross) to $2,500.00 (gross).  The Debtor was able to increase her salary due to the enrollment of new children in the Day Care.  Pursuant to the Debtor's license with the State of California, the Day Care is allowed to have fourteen (14) children at a single time without increasing the number of caretakers.  Further, the Day Care is licensed to operate 24

hours a day 7 days a week.  Therefore, the Debtor is able to increase the number of children at the Day Care without incurring additional expenses.

**B.**   **Events Leading to Chapter 11 Filing**

Debtor's financial problems stem from two divorces.  Debtor's first divorce from Tinis De Silva was in 2002.   Debtor's second divorce from Pradeep Gunawardana ("Gunawardana") was finalized in 2009.  From the 2002 divorce, Tinis De Silva was awarded a settlement of $223,000.00 and attorney fees.  In 2007, Debtor exhausted her savings and refinanced the Burnside Property in order to satisfy the settlement.

Around the same time, Debtor's Day Care business began to decline as parents lost their jobs and no longer needed to enroll their children in day care.  Shortly thereafter, the Debtor began to fall behind in debt service.  On November 18, 2009, ("Petition Date") the Debtor commenced her Chapter 11 case in order to restructure secured debts and reorganize her financial affairs.

**C.**   **Significant Events During the Bankruptcy**

**1.**   **Employment of Professionals**

The Court has approved the employment of the following professionals:

| Name of Professional | Date of Entered Order Approving Employment |
|---|---|
| Jerome S. Cohen, Bankruptcy Counsel | 03/22/2010 |
| Klein, Mandelblatt & Co., Chapter 11 Accountants | 03/17/2010 |
| Mark Hearn, State Certified Appraiser | 01/22/2010 |

\\

\\

\\

\\

### 2.      Valuation of The Burnside Property

As mentioned above and reflected in **Exhibit A**, the Burnside Property is the Debtor's main asset.  Santa Barbara Bank & Trust, dba Pacific Capital Bank, N.A. ("First Lender"), holds a note ("First Note") secured by a first deed of trust against the Burnside Property. According to First Lender's Proof of Claim, the amount of principal and interest currently outstanding on the First Note is $978,884.83.  See Proof of Claim No. 8.

Chase Home Finance ("Second Lender") holds a note ("Second Note") secured by a second deed of trust against the Burnside Property.  According to Second Lender's Proof of Claim, the amount of principal and interest currently outstanding on the Second Note is $198,219.85.  See Proof of Claim No.14.

On February 17, 2010, the Court entered an Order approving the stipulation between the Debtor and First Lender.  The stipulation between the Debtor and First Lender set forth adequate protection payment and plan treatment of First Lender's claim ("Stipulation").

On April 9, 2010 the Court entered an order valuing the Burnside Property at $860,000.00 ("Valuation Order").

### 3.      Procedures Implemented to Resolve Financial Problems

To attempt to fix the problems that led to the bankruptcy filing, Debtor has implemented the following procedures: (i) marketed the Day Care to increase number of children, thereby increasing cash flow, (ii) cut unnecessary costs of running the Day Care, (iii) negotiated with First Lender of the Burnside Property for a lower monthly debt service payment.   Further, beginning June 2010, the Debtor's nineteen year old son will pay all expenses related to his school tuition and school expenses (approximately $200.00 per month) in order to increase the Debtor's cash flow.  The Debtor has also cancelled her life insurance (approximately $180.00 per

month).  Thus, the Debtor has cut $380.00 worth of monthly expenses to increase her cash balance at the end of each month.

**4.      Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in **Exhibit A**.  The Debtor's post-petition income and expenses can be found in the Debtor's Monthly Operating Reports on file with the United States Trustee and on file with the Court. The Debtor's projected 4 year cash flow is set forth in **Exhibit B**.

**III.**

**SUMMARY OF THE PLAN OF REORGANIZATION**

**A.      Introduction**

The Debtor's Chapter 11 Plan provides payment to First Lender's claim in full pursuant to the Stipulation approved by the Court.

The Plan provides payment to Second Lender and unsecured creditors in an amount equal to **1.3%** of their claims.  If the Plan is not approved, unsecured creditors and the Second Lender of the Burnside Property will likely receive nothing because the First Lender will be allowed to foreclose on the Burnside Property.  As mentioned previously, the Burnside Property is the Debtor's main asset.  The fair market value of the Burnside Property as of December 2009 (pursuant to the Valuation Order) is $860,000.00, a value that is far exceeded by the claim of First Lender.  Because First Lender's claim of $978,884.83 is greater than the fair market value of the Burnside Property, First Lender's claim is undersecured.  Accordingly, the claim of Second Lender attaches to no collateral value and is wholly unsecured.

**B.**   **"1111(b) Election"**

Although First Lender's claim is undersecured, the Debtor does not seek to bifurcate the claim of First Lender. Rather, the Debtor proposes to pay First Lender's claim in full as set forth in the Stipulation approved by the Court. Because the Debtor seeks to provide payment to First Lender in full, First Lender does not have the right to make an "1111(b) election". This election is premised on Bankruptcy Code section 1111(b)(2), which states that "[i]f such an election is made, then... such claim is a secured claim to the extent that such claim is allowed." 11. U.S.C., §1111(b)(2). In other words, making the election indicates that the creditor elects to have both the unsecured and secured portions of its claim treated as a secured claim and to relinquish its right to vote on the plan as a general unsecured creditor and share in the distribution to general unsecured creditors. The "1111(b) election" is not available to First Lender because the Debtor's Chapter 11 Plan treats First Lender's claim as if it were wholly secured.

In addition, the Debtor believes that the "1111(b) election" is not applicable to Second Lender. Because First Lender's claim is only partially secured due to the decline in value of the Burnside Property, Second Lender's interest in the Burnside Property is wholly unsecured and is of inconsequential value. Section 1111(b)(1)(B)(i) provides that a class of secured claims cannot make the section 1111(b) election if "the interest … of the holders of [the secured claims] in such property [as may be collateral] is of inconsequential value". 3 Collier Bankruptcy Manual, ch. 1111, ¶ 1111.03[3][b] (Matthew Bender 15th Ed. 2006).

The Plan provides 1.3% distribution to Second Lender (designated as Class 2 as more fully described in Section IV.C.1). Upon completion of plan payments to Second Lender (Class 2), the lien of Second Lender that originally encumbered the Burnside Property shall be extinguished and shall no longer be a lien or encumbrance on the Burnside Property. In the

event the Plan is not approved, First Lender is likely to foreclose on the Burnside Property and Second Lender will likely receive no value on its claim.

Under the Plan, the Debtor will contribute her post confirmation income sufficient to pay the allowed claims of Second Lender and the allowed claims of unsecured creditors a distribution equal to **1.3%** of their allowed claim.

## IV.

## CLASSIFICATION AND TREATMENT OF

## CLAIMS AND INTERESTS UNDER THE PLAN

**A.    What Creditors and Interest Holders Will Receive Under The Proposed Plan**

As required by the Bankruptcy Code, the Plan classifies similar claims and interests in the same class.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

**B.    Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has <u>not</u> placed the following claims in a class.

\\

\\

## 1.    Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(1).  The Code requires that each allowed administrative claim be paid in cash, in full, on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan:

| <u>Name</u> | <u>Amount Owed</u> | <u>Treatment</u> |
|---|---|---|
| Jerome S. Cohen ("Cohen") Debtor's Bankruptcy Counsel | $30,000.00 (estimated) | This claimant is entitled to payment in full from cash on hand on the Plan's Effective Date but has agreed to accept installment payments of $1,500.00 at the Effective Date and then $500.00 per month until paid in full. |
| Klein Mandelblatt & Co. LLP | $9,500.00 (estimated) | This claimant is entitled to payment in full from cash on hand on the Plan's Effective Date but has agreed to accept installment payments of $1,000.00 at the Effective Date and then $500.00 per month until paid in full. |
| Mark A. Hearn | $0.00 | Hearn has been paid pursuant to his employment application. |
| Clerk's Office Fees | $1,000 (estimated) | Paid in full on Effective Date |
| Office of the U.S. Trustee Fees | $325.00 (estimated) | Paid in full on Effective Date |
| TOTAL: $40,825.00 ($3,825.00 to be paid at Effective Date) | | |

<u>Court Approval of Fees Required</u>:

The Court must approve all fees listed in this chart before the fees will be owed.  For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application.  Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated above, the Debtor will need to pay **$3,825.00** worth of administrative claims on the Effective Date of the Plan unless the claimant has agreed to be paid later or the Court has not yet ruled on the claim.  As indicated in this Second Amended Disclosure Statement, Debtor expects to have **$16,152.18** in cash on the Effective Date of the Plan, sufficient to satisfy the foregoing administrative claims.

### 2.    Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five (5) years from the date of the assessment of such tax.

The following chart lists <u>all</u> of the Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan:

| Description | Amount Owed | Treatment |
|---|---|---|
| **Internal Revenue Service**<br>Income Tax<br>Date tax assessed = 3/16/2009 | $1,386.26[1] | Paid in full upon the Effective Date. |
| ~~L.A. County Treasurer and Tax Collector~~[2]<br>~~Property Tax~~<br>~~for the period 7/1/2009-6/30/2010~~ | ~~$2,572.47~~<br>~~Per filed proof of claim~~ | ~~Debtor paid claim in full on 4/10/10.~~<br>~~Amount Owed is now $0.00.~~ |

\\

\\

\\

---

[1] On January 6, 2010, the IRS filed a Proof of Claim in the amount of $2,454.94.  The Debtor has made several post-petition payments toward this claim in order to avoid penalties and fees.  As a result, the claim is now only $1,386.34 as of April 15, 2010.

[2] On June 7, 2010, the Los Angeles County Treasurer & Tax Collector withdrew its Proof of Claim reflected in the Claims Register as Claim no. 13.

## C.  Classified Claims and Interests

### 1.  Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan:

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | **Secured claim of:** Pacific Capital Bank dba Santa Barbara Bank & Trust ("First Lender") <br><br> **Collateral description:** 1025 South Burnside Ave Los Angeles, CA 90019 <br><br> **Collateral value:** $860,000.00 (per Valuation Order) <br><br> **Priority of security int.:** 1st TD <br><br> **Amount of Claim:** $978,884.83 (per proof of claim #8) <br><br> **Unsecured Portion of Claim:** None. Debtor resides at this property and does not seek bifurcation of this claim. | N | Y <br><br> Creditor in this class is impaired and entitled to vote on the Plan | **Pymt interval:** Monthly <br><br> *Stage One* **Pymt amt/interval:** $4,805.67 (Includes escrow payments. Escrow payment subject to slight fluctuations due to changes in taxes and insurance) **Begin date:** 04/01/2010 **End date:** 03/01/2013 <br><br> **Interest rate:** 3.125% <br><br> *Stage Two* **Pymt amt/interval:** $5,203.35 (Includes escrow payments. Escrow payment subject to slight fluctuations due to changes in taxes and insurance) <br><br> **Begin date:** 04/01/2013 **End date:** 03/01/2037 <br><br> **Interest rate** 3.125% **Treatment of Lien** Retained <br><br> The treatment of the Class 1 allowed claim described in the Plan shall be in full settlement and satisfaction of the entire claim including all arrears. |

Class 1 is secured by real property that is the Debtor's residence.  The Debtor does not seek to bifurcate the claim of the creditor in Class 1, but will pay this claim in full.  Accordingly, no 1111(b) election is applicable for Class 1.

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|----------------|-----------|
| 2 | **Secured claim of:** Chase Home Finance<br><br>**Collateral description:** 1025 South Burnside Ave Los Angeles, CA 90019<br><br>**Collateral value:** $860,000.00 (per Valuation Order)<br><br>**Priority of security int.:** 2nd TD<br><br>**Amount of Claim:** $198,219.85 (per proof of claim #14)<br><br>**Secured Portion of Claim:** $0.00<br><br>**Unsecured Portion of Claim:** $198,219.85—entire claim is unsecured | N | Y<br><br>Creditor in this class is impaired and entitled to vote on the Plan | \*\*\*Class 2 treatment identical to treatment of Class 4 \*\*\*<br><br>**Pymt interval:** Monthly<br><br>*Stage One*<br>**Pymt amt/interval:** $53.69<br><br>**Begin date:** Effective Date<br>**End date:** 48 months from the Effective Date<br><br>**Treatment of Lien** Extinguished<br><br>**Total Payout: 1.3%** $2,577.12 |

The claim of Class 2 is wholly unsecured and accordingly is of inconsequential value. Pursuant to 11 U.S.C. §1111(b)(1)(B)(i), the creditor in Class 2 cannot make the election under 1111(b).

**Claim secured by Debtor's Vehicle.**

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 3 | **Secured claim of:** HSBC Auto Finance f/k/a Household Auto Finance Corp.<br><br>**Collateral description:** 2003 Mercedes Benz E Class Sedan 4D E500<br><br>**Collateral value:** $15,352.00<br><br>**Priority of security int.:** 1st<br><br>**Amount of Claim:** $15,730.37(per proof of claim #3) | N | N<br><br>Creditor in this class is not entitled to vote on the Plan | **Pymt interval:** Monthly<br>*Stage One*<br>**Pymt amt/interval:** $375.00<br>**Begin date:** 04/29/2010<br><br>**End date:** 10/29/2013<br>**Interest rate:** 10.49%<br><br>**Treatment of Lien** Retained<br><br>The treatment of the Class 3 allowed claim described in the Plan shall be in full settlement and satisfaction of the entire claim. |

Class 3 is secured by a vehicle that is used by the Debtor's business, De Silva Day Care Inc. Debtor is not in default of this claim and does not seek any modification of the contract terms, but will pay this claim in full pursuant to the terms of the original note. Accordingly, no 1111(b) options are applicable for Class 3. The Debtor requires the use of this vehicle to pick up children from school.

## 2.    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The Debtor does not have any claims that would qualify as Sections 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims under the Plan.

### 3.    Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).  The following chart identifies this Plan's treatment of the class containing <u>all</u> of Debtor's general unsecured claims (see **Exhibit C** for detailed information about each general unsecured claim):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|
| 4 | All General Unsecured Claims<br><br>**Total amt of claims = $157,717.58**<br><br>(per Schedule F and filed proofs of claim) | Y | Pymt interval<br><br>Pymt amount<br><br>Begin date<br><br>End date<br><br>Total payout<br>**1.3%** | = monthly<br><br>= $42.72<br><br>= Effective Date<br><br>=48 months from the Effective Date<br><br>= $2,050.56 |

## D.    <u>Means of Effectuating the Plan</u>

### 1.    Funding for the Plan

The Plan will be funded from the rental income the Debtor receives from the Day Care and from her employment income.  As mentioned previously, the Debtor rents the Burnside Property to the Day Care for $6,000.00 per month. The Debtor also receives a salary from the Day Care.  On June 1, 2010, the Debtor increased her monthly salary from $1,500.00 (gross) to $2,500.00 (gross).

Also during the pendency of this Chapter 11 case the Debtor has not been making

mortgage payments and has been saving money.  As of May 31, 2010, Debtor had approximately

**$11,088.29** cash on hand.  Debtor anticipates that on the Effective Date, Debtor will have

approximately **$16,152.18** available.

     **2.**      **Post-confirmation Management**

Debtor alone will provide post-confirmation management.  Debtor does not seek

compensation in performing this duty.

     **3.**      **Disbursing Agent**

The Debtor will act as her own disbursing agent for the purpose of making all

distributions provided for under the Plan.  The disbursing agent shall serve without bond and

without compensation.

**E.**      **Risk Factors**

The primary risk of implementing the Plan would be a decline in revenues generated

from the Day Care resulting in the Day Care's defaulting on its rental and wage payments to the

Debtor.  The Debtor has accounted for this risk by having a savings of **$16,152.18** on the

Effective Date.  Further the Debtor plans to continue to save and cut expenses from the

Day Care so that it remains profitable.  As of June 1, 2010, the Debtor has already increased her

salary from the Day Care by $740.30 net per month and reduced expenses by cutting out her

son's tuition ($200.00 per month) and canceling her life insurance ($180.00 per month) for a

total of $380.00 per month.

As Debtor's Cash Flow Statement shows **(Exhibit B)**, each month the Debtor will have a

surplus that the Debtor will save in anticipation of emergencies or a decline in revenues from the

Day Care.  The Debtor's Cash Balance at the end of each month will also substantially increase when administrative fees are paid off.

**F.    Other Provisions of the Plan**

      **1.        Executory Contracts and Unexpired Leases**

Debtor has no executory contracts and leases expired or unexpired.

      **2.        Changes in Rates Subject to Regulatory Commission Approval**

This Debtor is not subject to governmental regulatory commission approval of its rates.

      **3.        Retention of Jurisdiction.**

The Court will retain jurisdiction to the extent provided by law.

**G.    Tax Consequences of Plan**

      CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor.  The Debtor CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

      The Debtor does not anticipate that this Plan will have a significant or material effect on her tax liability.  The Debtor makes no representations regarding the potential tax consequences to creditors.

# V.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

**PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX**

The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The Debtor CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible. These requirements are not the only requirements for confirmation.

## A.    Who May Vote or Object

### 1.    Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### 2.    Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

### a.    What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes. THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS March 31, 2010 for non-governmental entities and was May 18, 2010 for governmental entities. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

### b.    What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Debtor believes that **Class 1, Class 2, and Class 4** are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Debtor believes that **Class 3** is unimpaired and that the holder of the claim in class 3 does not have the right to vote to accept or reject the Plan. Parties who dispute the Debtor's

characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3.    Who is Not Entitled to Vote

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.

EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5.    Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section {V.A.8.}.

### 6.    Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan.  A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

### 7.    Treatment of Nonaccepting Classes

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code.  The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown."  The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 8.    Request for Confirmation Despite Nonacceptance by Impaired Class(es)

The Debtor will ask  the Court to confirm this Plan by cramdown on any impaired classes if any of these classes do not vote to accept the Plan.

### B.    Liquidation Analysis

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that

such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Debtor maintains that this requirement is met here.

The Debtor's main asset is the Burnside Property. The fair market value of the Burnside Property, as determined by the Court at the valuation hearing, is less than the amount of the secured claim asserted by the First Lender. Therefore, if liquidation were to occur, there would not be enough funds to satisfy the claim of the First Lender, much less any claims of Second Lender and the general unsecured creditors. In contrast, Debtor's Plan proposes to pay First Lender's claim in full, with interest, over time in amounts set forth in Debtor's Stipulation with First Lender. Further, Debtor's Plan proposes to pay general Second Lender and general unsecured creditors a **1.3%** distribution of its total claim.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as they would receive under a Chapter 7 liquidation.

| Description of Asset | Fair Market Value of Asset | Exemption | Value of Asset after Deducting Value of Exemption |
|---|---|---|---|
| The Burnside Property | $860,000.00 (per 4/09/2010 Valuation Order) | | $860,000.00 |
| Vacant Lot located in Apple Valley | $20,000.00 | C.C.P. §703.140(b)(5)<br><br>Value of Claimed Exemption :$20,000.00 | $0.00 |
| Cash–DIP General Account | $16,152.18 | | $16,152.18 |
| Personal Property<br><br>(Household goods, Office Equipment, Clothing, Books and Pictures) | $10,200.00 | C.C.P. §703.140(b)(3)<br>C.C.P. §703.140(b)(6)<br><br>Value of Claimed Exemption :$10,200.00 | $0.00 |
| Jewelry | $8,000.00 | C.C.P. §703.140(b)(4)<br><br>Value of Claimed Exemption:$1,425.00 | $6,575.00 |
| 2000 Chrysler Town and Country Mini Van | $6,250.00 (per kbb.com) | C.C.P. §703.140(b)(2)<br>C.C.P. §703.140(b)(5)<br><br>Value of Claimed Exemption:$6,250.00 | $0.0 |
| 2003 Mercedes Benz E500 | $15,690.00 (per kbb.com) | | $15,690.00 |
| **TOTAL VALUE OF ASSETS MINUS VALUE OF EXEMPTIONS** | | | **$898,417.18** |
| **Less** | | | |
| **LESS** (Secured Creditors) | | | $994,615.20 |
| **LESS** (Chapter 7 Trustee Fees) | | | $35,779.92 |
| **LESS** (Chapter 11 Administrative Fees) | | | $25,825.00 |
| **LESS** (Priority Claims) | | | $2,454.94 |
| **TOTAL AVAILABLE FOR DISTRIBUTION TO GENERAL UNSECURED CREDITORS** | | | $0.00 |

PERCENTAGE OF THEIR CLAIMS WHICH UNSECURED CREDITORS AND SECOND

LENDER WOULD RECEIVE OR RETAIN IN A CHAPTER 7 LIQUIDATION = **0%**

PERCENTAGE OF THEIR CLAIMS WHICH UNSECURED CREDITORS AND SECOND

LENDER WILL RECEIVE OR RETAIN UNDER THIS PLAN: **1.3%**

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as they would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| **Administrative Claims** | Same | Same |
| **Priority Tax Claims** | **100%** | **0%** |
| **Class 1 -** <br> Secured claim of: <br> Pacific Capital Bank dba Santa Barbara Bank & Trust ("First Lender") <br><br> <u>Amount of Claim:</u> <br> $978,884.83 (per proof of claim #8) | **100%** <br> Pursuant to Stipulation with First Lender, Debtor proposes to pay First Lender's claim in full with interest over time. | **75%** (estimated, based on fair market value of $860,000.00, and costs and fees associated with foreclosure) |
| **Class 2-** <br> Secured claim of: <br> Chase Home Finance ("Second Lender") <br><br> **Amount of Claim** <br> $198,219.85 (per proof of claim #14) | **1.3%** | **0%** |
| **Class 3** <br> Secured claim of: <br> HSBC Auto Finance f/k/a Household Auto Finance Corp. <br><br> <u>Amount of Claim:</u> <br> $15,730.37(per proof of claim #3) | **100%** <br> Debtor shall continue payments pursuant to the original note. | **63%** (estimated) (based on fair market value of $15,690.00, and costs and fees associated with repossession) |
| **Class 4** <br> All General Unsecured Claims <br><br> Total Amount of Claims: <br> $157,717.58 | **1.3%** | **0%** |

## C.   <u>Feasibility</u>

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date. The Debtor maintains that this aspect of feasibility is satisfied as illustrated here:

| Cash Debtor will have on hand by Effective Date | | **$16,152.18** |
|---|---|---|
| **Payments on Effective Date** | | |
| | Administrative Claims | $2,500.00 |
| | Clerk's Office Fees | $1,000.00 |
| | Office of the United States Trustee Fees | $325.00 |
| | Plan Payment to Internal Revenue Service | $1,386.26 |
| | Plan Payment to Class 1 (First Lender) | $4,805.67 |
| | Plan Payment to Class 2 (Second Lender) | $53.69 |
| | Plan Payment to Class 3 | $400.00 |
| | Plan Payment to Class 4 | $42.72 |
| **Total Plan Payments Due on Effective Date** | | $10,513.34 |
| **CASH BALANCE** | | **$5,638.84** |

\\

\\

\\

\\

The second aspect considers whether the Debtor will have enough cash over the life of the Plan to make the required Plan payments. The Debtor has provided financial statements which include both historical and projected financial information. Please refer to **Exhibit B** for the Debtor's projected financial information and the Debtor's Monthly Operating Reports on file with the Court and the United States Trustee for the Debtor's historical information.  A copy can also be obtained by written request to Debtor's bankruptcy counsel.

YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

### 1. "Stage One" of the Plan

Pursuant to Debtor's stipulation with First Lender, Debtor's payments to First Lender are $4,805.67 per month through and including March 1, 2013.  Debtor's monthly payments of $4,805.67 are hereafter referred to as "Stage One" of the Plan.  Debtor asserts, and the cash flow attached to the Disclosure Statement as **Exhibit B** reflects, that the Debtor has sufficient income to fund Stage One.  The following is a chart showing the average monthly income and expenses for one month during Stage One of the Plan:

\\

\\

\\

\\

\\

\\

\\

| INCOME | |
|---|---:|
| Salary from De Silva Day Care (Net) | $2,040.30 |
| Rental Income | $6,000.00 |
| Misc. Income | $131.00 |
| Vehicle Reimbursement | $400.00 |
| **Net Income** | **$8,571.30** |
| **OPERATING EXPENSES** | |
| Property Taxes Vacant Lot (monthly average) | ($86.17) |
| Transportation | ($100.00) |
| Utilities | ($300.00) |
| Home Maintenance | ($150.00) |
| Food | ($300.00) |
| Clothing | ($100.00) |
| Laundry | ($20.00) |
| Medical | ($50.00) |
| Health Insurance | ($282.00) |
| Auto Insurance | ($59.00) |
| Miscellaneous | ($100.00) |
| **Total** | **($1,547.17)** |
| **PLAN PAYMENTS** | |
| Attorney Fees | ($500.00) |
| Accountant Fees | ($500.00) |
| Office of US Trustee Fees (monthly average) | ($108.33) |
| Class 1: First Lender | ($4805.67) |
| Class 2: Second Lender | ($53.69) |
| Class 3:Vehicle | ($400.00) |
| Class 4: Unsecureds | ($42.72) |
| **Total** | **($6,410.41)** |
| **MONTHLY CASH BALANCE** | **$613.72** |

The above chart does not take into account the Debtor's cash on hand savings of **$16,152.18** that the Debtor expects to have as of the Effective Date.

**2. "Stage Two" of the Plan**

On April 1, 2013, pursuant to Debtor's Stipulation with First Lender, Debtor's monthly payments to First Lender will increase from $4,805.67 to $5,203.35. Debtor's monthly payments of $5,203.35 are hereafter referred to as "Stage Two" of the Plan. This is an increase of the Debtor's monthly expenses by $397.68 per month. The Debtor anticipates having paid off all Chapter 11 Accounting fees by November 2012. Therefore, by the time Stage Two of the plan approaches on April 1, 2013, the Debtor will have an increase in funds that allows the Debtor to comfortably make Stage Two Plan payments.

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

| INCOME | |
|---|---|
| Salary from De Silva Day Care (Net) | $2,040.30 |
| Rental Income | $6,000.00 |
| Misc. Income | $131.00 |
| Vehicle Reimbursement | $400.00 |
| **Net Income** | **$8,571.30** |
| **OPERATING EXPENSES** | |
| Property Taxes Vacant Lot | ($86.17) |
| Transportation | ($100.00) |
| Utilities | ($300.00) |
| Home Maintenance | ($150.00) |
| Food | ($300.00) |
| Clothing | ($100.00) |
| Laundry | ($20.00) |
| Medical | ($50.00) |
| Health Insurance | ($282.00) |
| Auto Insurance | ($59.00) |
| Miscellaneous | ($100.00) |
| **Total** | **($1,547.17)** |
| **PLAN PAYMENTS** | |
| Attorney Fees | ($500.00) |
| *Accountant Fees (PAID OFF)* | ($0.00) |
| Office of US Trustee Fees | ($108.33) |
| Class 1: First Lender | ($5,203.35) |
| Class 2: Second Lender | ($53.69) |
| Class 3: Vehicle | ($400.00) |
| Class 4: Unsecureds | ($42.72) |
| **Total** | **($6,308.09)** |
| **MONTHLY CASH BALANCE** | **$716.04** |

In summary, the Plan proposes to disburse **$11,977.93** on the Effective Date and then disburse on average $7,957.58 each month for the first 12 months.  Debtor's net income of $8,571.30 per month is sufficient to make these disbursements.   As Debtor's financial projections demonstrate, Debtor will have an annual cash flow, after paying operating expenses and post-confirmation taxes, of $19,630.56 after the first year, $28,995.20 after the second year, $39,371.44 after the third year, and $44,963.92 after the fourth year of the plan.  See **Exhibit B**. The Debtor's cash flow will increase in subsequent years when administrative claims are paid off in the third and fourth years of the Plan.  The final Plan payment is expected to be paid 4 years or 48 months from the Effective Date.

The Debtor contends that the financial projections in **Exhibit B** are feasible.  As reflected on Debtor's Monthly Operating Reports, Debtor's average post-petition income is approximately $7,000.00 per month and Debtor expects it to increase.  In fact, beginning June 1, 2010, the Debtor was able to increase her post-petition salary by $740.30 (net) due to the increase of her salary to $2,500.00 gross per month. The Debtor's May 2010 MOR reflects an increase in cash receipts to $9,060.71.  Furthermore, as discussed earlier in the Second Amended Disclosure Statement at Section {IV.E}, Debtor plans to increase the number of students at the Day Care, thereby allowing her to increase her salary accordingly.  Post-petition, the Debtor has steadily increased the number of students and the Debtor expects to continue this trend.

\\

\\

# VI.

## EFFECT OF CONFIRMATION OF PLAN

**A.    Discharge**

The Debtor will receive a discharge under the Plan pursuant to and in accordance with 11 U.S.C. § 1141. This Plan provides that upon completion of payments to **Class 2 and Class 4**, Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. § 1141.  The Debtor may file a motion to reopen the case in order to obtain an order entering the discharge.

**B.    Revesting of Property in the Debtor**

The confirmation of the Plan revests all of the property of the estate in the Debtor.

**C.    Modification of Plan**

The Debtor may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.    Post-Confirmation Status Report**

Within 120 days of the entry of the order confirming the Plan, the Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities.

**E.**    **Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

**F.**    **Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

\\

\\

\\

\\

**G.     Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Debtor, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

Date: July 8, 2010

                                        */s/ Dreena Marie De Silva*
                                        Dreena Marie De Silva,
                                        Debtor and Debor-in-Possession
                                        Plan Proponent

Date: July 8, 2010

                                        */s/ Jerome S. Cohen*
                                        Jerome S. Cohen
                                        Attorney for Plan Proponent

# VII.

## DECLARATION OF DREENA MARIE DE SILVA

I, DREENA MARIE DE SILVA, declare:

1.      I am the Chapter 11 debtor and debtor-in-possession in the above-captioned case as well as the Plan Proponent.

2.      I make this declaration in support of this *Second Amended Disclosure Statement Describing Original Chapter 11 Plan* ("Disclosure Statement").

3.      I have reviewed my Disclosure Statement.  To the best of my knowledge, information and belief, all of the information contained in this Disclosure Statement is truthful and accurate.

4.      Attached herein to the Second Amended Disclosure Statement as **Exhibit A** is a true and correct list of all my assets.

5.      Attached herein to the Second Amended Disclosure Statement as **Exhibit B** is a true and correct copy of my 4 year projected cash flow.

6.      Attached herein to the Second Amended Disclosure Statement as **Exhibit C** is a true and correct copy of all my general unsecured claims.


I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.


Executed on July 8, 2010, at Los Angeles, California

                                        */s/ Dreena Marie De Silva*
                                        Dreena Marie De Silva,
                                        Debtor and Debor-in-Possession
                                        Plan Proponent